GOLD BENNETT CERA & SIDENER LLP
SOLOMON B. CERA (99467)
THOMAS C. BRIGHT (169713)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
scera@gbcslaw.com
tbright@gbcslaw.com

Attorneys for The Shackleton Family Revocable Trust

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BROWN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHINA INTEGRATED ENERGY, INC., GAO XINCHENG, ALBERT C. PU, AND LI GAIHONG, <br><br> Defendants. <br><br> [caption continues on next page] | Case No. CV11-2559 MMM (PLAx) <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE SHACKLETON FAMILY REVOCABLE TRUST FOR (I) APPOINTMENT AS LEAD PLAINTIFF; (II) APPROVAL OF SELECTION OF LEAD COUNSEL; AND (III) CONSOLIDATION OF RELATED CASES <br><br> DATE:      August 29, 2011 <br> TIME:      10:00 a.m. <br> CTRM:      780, Los Angeles – Roybal <br> JUDGE:    Margaret M. Morrow |

#123953

| | | |
|---|---|---|
| 1 | JACOB LEVY, Individually and on Behalf of All Others Similarly Situated, | Case No.: CV11-02717 MMM (PLAx) |
| 2 | | |
| 3 | Plaintiff, | |
| 4 | vs. | |
| 5 | CHINA INTEGRATED ENERGY | |
| 6 | INC., XINGCHENG GAO; ALBERT C. PU, and GAIHONG LI, | |
| 7 | | |
| 8 | Defendants. | |
| 9 | | |
| 10 | | |
| 11 | NOEL X. NEGRONI, Individually and on Behalf of All Others Similarly Situated, | Case No.: CV11-03675 GW (PJW) |
| 12 | | |
| 13 | | |
| 14 | Plaintiff, | |
| 15 | vs. | |
| 16 | CHINA INTEGRATED ENERGY, INC., GAO XINCHENG, ALBERT C. PU, AND LI GAIHONG, | |
| 17 | | |
| 18 | | |
| 19 | Defendants. | |
| 20 | | |
| 21 | AARON GRUNFELD, Individually and on Behalf of All Others Similarly Situated, | Case No.: CV11-04093 JAK (SH) |
| 22 | | |
| 23 | | |
| 24 | Plaintiff, | |
| 25 | vs. | |
| 26 | CHINA INTEGRATED ENERGY, INC., XINCHENG GAO, ALBERT C. PU, AND GAIHONG LI, | |
| 27 | | |
| 28 | Defendants. | |

#123953

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.    STATEMENT OF FACTS ..................................................................... 2

III.    ARGUMENT ..................................................................................... 5

    A.    The Shackleton Trust Should Be Appointed Lead Plaintiff ................. 5

        1.    The Legal Requirements Under The PSLRA ............................ 5

        2.    Notice of Pendency .......................................................... 7

        3.    The ShackletonTrust Believes It Has The Largest Financial Interest In The Relief Sought By The Class ............................ 8

        4.    The Shackleton Trust Otherwise Satisfies The Requirements Of Rule 23 .................................................................... 9

    B.    The Court Should Approve the Shackleton Trust's Selection Of Lead Counsel .................................................................... 11

    C.    The Related Actions Should Be Consolidated .................................... 12

IV.    CONCLUSION .................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

1

**Cases**

2

*Armour v. Network Assoc., Inc.*
   171 F.Supp.2d 1044 (N.D.Cal. 2001) ..........................................................10

*Ferrari v. Gisch*
   225 F.R.D. 599 (C.D.Cal. 2004) .................................................................10

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992).....................................................................10

*In re Cavanaugh*
   306 F.3d 726 (9th Cir. 2002).....................................................................6, 8

*In re McKesson HBOC, Inc. Sec. Litig.*
   97 F.Supp.2d 993 (N.D.Cal. 1999) ..............................................................8

*In re Northern District of California, Dalkon Shield IUD Prods. Liab. Litig.*
   693 F.2d 847 (9th Cir. 1982).....................................................................11

*In re Olsten Corp. Sec. Litig.*
   3 F.Supp.2d 286 (E.D.N.Y. 1998).................................................................8

*In re Peregrine Systems, Inc. Sec. Litig.*
   No. 02-CV-870-J (RBB), 2002 WL 32769239 (S.D.Cal. Oct. 11, 2002).......7

*In re Rent-Way Sec. Litig.*
   305 F.Supp.2d 491 (W.D. Pa. 2003) ..........................................................12

*Investors Research Co. v. United States Dist. Court*
   877 F.2d 777 (9th Cir. 1989).....................................................................12

*Kaplan v. Gelfond*
   240 F.R.D. 88 (S.D.N.Y. 2001) .................................................................12

*Lax v. First Merchant's Acceptance Corp.*
   No. 97-C-2715, 1997 WL 461036 (N.D.Ill. Aug. 11, 1997) ..........................8

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

*Ruland v. InfoSonics Corp.*
    No. 06-CV-1231 (BTM) (WMC), 2006 WL 3746716 (S.D.Cal. Oct. 23,
    2006) ....................................................................................................8

*Siegall v. Tibco Software, Inc.*
    No. C-05-2146 (SBA), 2006 WL 1050173 (N.D.Cal. Feb 24, 2006)........... 12

*Southwest Marine Inc. v. Triple A Machine Shop, Inc.*
    720 F.Supp. 805 (N.D. Cal. 1989) ................................................................ 13

*Takeda v. Turbodyne Techs., Inc.*
    67 F.Supp. 2d 1129 (C.D. Cal. 1999).......................................................... 13

*Tanne v. Autobytel, Inc.*
    226 F.R.D. 659 (C.D.Cal. 2005) .................................................................. 10

*Wenderhold v. Cylink Corp.*
    188 F.R.D. 577 (N.D.Cal. 1999) .................................................................. 10

*Zucker v. Zoran Corp.*
    No. 06-4843 (WHA), 2006 WL 3591156 (N.D.Cal. Dec. 11, 2006) ........... 10

**Statutes, Rules and Regulations**

15 U.S.C. §78(j)(b) .............................................................................................1

15 U.S.C. §78(t) .................................................................................................1

15 U.S.C. §78u-4(a)(1) .......................................................................................5

15 U.S.C. §78u-4(a)(3)(A)(i) ..............................................................................5

15 U.S.C. §78u-4(a)(3)(B) ............................................................................1, 5

15 U.S.C. §78u-4(a)(3)(B)(i) ........................................................................1, 6

15 U.S.C. §78u-4(a)(3)(B)(ii) ..........................................................................12

15 U.S.C. §78u-4(a)(3)(B)(iii) ............................................................................8

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ...................................................................2, 6

# TABLE OF AUTHORITIES

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) ................................................................6

15 U.S.C. §78u-4(a)(B)(v) .......................................................................11

17 C.F.R. §240.10b-5 ...............................................................................1

Federal Rule of Civil Procedure

     Rule 23 .......................................................................2, 6, 9, 10

     Rule 42(a) ..............................................................................14

Securities Exchange Act of 1934

     Section 10(b) .....................................................................1, 13

     Section 20(a) .....................................................................1, 13

     Section 21D(a)(3)(B) ..............................................................1

     Section 21D(a)(3)(B)(v) .........................................................11

#123953

1    The Shackleton Family Revocable Trust ("Shackleton Trust") respectfully

2    submits this memorandum in support of its motion for: (i) appointment as Lead

3    Plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934

4    (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private

5    Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) approval of its

6    selection of the law firm of Gold Bennett Cera & Sidener LLP as Lead Counsel for

7    the Class; and (iii) consolidation of all related cases.

8    **I.      PRELIMINARY STATEMENT**

9    Currently pending in this District are four (4) securities class actions (the

10   "Related Cases") brought on behalf of those who purchased the common stock of

11   China Integrated Energy, Inc. ("China Integrated") no earlier than March 31, 2009

12   through no later than April 20, 2011, inclusive (the "Class Period").

13   The Related Cases allege violations of Sections 10(b) and 20(a) of the

14   Exchange Act, as amended by the PSLRA (15 U.S.C. §§78(j)(b) and 78(t)) and

15   Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), against China

16   Integrated and certain of its executive officers.  The first of the Related Cases was

17   filed on March 25, 2011 by Mr. Larry Brown, and notice of the pendency of the

18   action was published to investors on March 25, 2011, which provided a deadline to

19   seek Lead Plaintiff status by May 24, 2011.[1]

20   Pursuant to the PSLRA, the Court must appoint the "most adequate

21   plaintiff" to serve as Lead Plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(i).  In that regard,

22   the Court is required to determine which movant has the "largest financial interest"

23   in the relief sought by the Class in this litigation and also makes a *prima facie*

24

25

26   [1]   A copy of Mr. Brown's notice is attached as Exhibit A to the Declaration of
     Thomas C. Bright in Support Of The Motion Of The Shackleton Family Revocable
27   Trust For (I) Appointment As Lead Plaintiff; (II) Approval Of Selection Of Lead
     Counsel; And (III) Consolidation Of Related Cases (the "Bright Decl.").
28

#123953                                                                        -1-

showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, the Shackleton Trust believes it is the "most adequate plaintiff" by virtue of its substantial investment in China Integrated common stock. Specifically, the Shackleton Trust incurred losses totalling approximately $99,205.40 in connection with its purchases of China Integrated common stock during the Class Period.[2]  The Shackleton Trust further satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure as its claims are typical of the other Class members and it will fairly and adequately represent the Class.

Finally, the Shackleton Trust fully understands a Lead Plaintiff's duties to the Class under the PSLRA, and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to ensure vigorous prosecution of this action.  The Shackleton Trust has selected Gold Bennett Cera & Sidener LLP, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, the Shackleton Trust respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## II.   STATEMENT OF FACTS

China Integrated Energy, Inc. ("China Integrated" or the "Company") is a non-state-owned integrated energy company in China.  It engages in three business segments: (1) the wholesale distribution of finished oil and heavy oil products, (2) the production and sale of biodiesel, and (3) the operation of retail gas stations.  Its major business is the wholesale distribution of finished oil and heavy oil products. The Company sells primarily gasoline, diesel and heavy oil in 16 provinces and municipalities through seven sales offices located in various regions in China.

---

[2]   The PSLRA-required Certification of the Shackleton Trust is attached as Exhibit B to the Bright Decl.

-2-

The complaints in the Related Actions generally allege that throughout the Class Period - March 31, 2010 through and including April 20, 2011 - the defendants made false and misleading statements and material omissions regarding the Company's business, operations, management and its intrinsic value, causing investors to purchase China Integrated securities at artificially inflated prices. Specifically, China Integrated failed to disclose that (1) certain transactions and acquisitions of China Integrated were related party transactions, (*i.e.,* the acquisitions of the Chongqing Tiarun biodiesel plant and the Shenmu gas station); (2) China Integrated's ownership interest in certain key Company assets had been wrongfully transferred to the CEO's son.  As a result of failing to make these disclosures, the Company's financial statements were not fairly presented in conformity with GAAP and were materially false and misleading.

On March 16, 2011, the first disclosure of improper acquisitions and the wrongful transfer of cash by the Company to Gao Bo, the son of China Integrated's CEO, emerged in a publicly circulated analyst report.  Following the circulation of this analyst report, China Integrated's stock declined by $0.95 per share, or 16%, to close at $5 per share.  On March 17, 2011, the stock declined by an additional $1.23 per share, or 24.6%, to close at $3.77 per share.

On March 23, 2011, the Company issued a press release announcing that it had made available a letter to shareholders that responded to allegations made in a March 16, 2011 research report.  Although the March 23 shareholder letter denied certain allegations, including one related party transaction, it effectively corroborated certain other allegations that had been made, including that RMB 20 million had been paid for an interest in a Company that China Integrated had then transferred to the CEO's son.

On April 5, 2011, China Integrated announced that the Audit Committee of the Company's Board of Directors had retained the law firm Pillsbury Winthrop Shaw Pittman LLP who, in turn, with the Audit Committee retained Deloitte

#123953

-3-

Financial Advisory Services LLP to, together, advise the Company's Audit Committee with regard to the Audit Committee's independent investigation into various issues that had been raised.  Mr. Larry Goldman, an independent Director and Audit Committee Chairman, stated, "We consider these issues to be significant and the Audit Committee intends to conduct a thorough and independent investigation.  The Audit Committee will authorize counsel to engage such additional independent advisors as deemed necessary and the Committee will work to conclude the investigation in a timely manner."

On April 20, 2011, after the markets closed, the NASDAQ Stock Market announced that trading was halted in China Integrated and "will remain halted until China Integrated Energy, Inc. has fully satisfied NASDAQ's request for additional information."  The Company's stock has remained halted to the present, rendering it effectively worthless to its shareholders who are unable to sell the Company's stock even at the last closing price of $1.84 per share.

On April 21, 2011, director Goldman submitted his resignation to the Company's Board of Directors.  In his resignation letter, he indicated that recent events relating to the independent investigation conducted by the Audit Committee, including the resignation of Pillsbury Winthrop Shaw Pittman LLP, were the cause of him stepping down.

On May 2, 2011, the Company disclosed that its auditors, KPMG, had resigned on April 26, 2011.  In its resignation letter, KPMG stated:

> The inconsistency between management's representation to us that it will fully cooperate with the special investigation requested and authorized by the Audit Committee and the manner of management's conduct during the investigation raises doubts about management's representations provided to us in connection with our 2010 audits of the consolidated financial statements and the effectiveness of internal controls over financial reporting of the Company.

KPMG also notified the Company that disclosures should be made or action should be taken to prevent further reliance on its previously issued audit reports dated March 16, 2011 related to the consolidated balance sheet of the Company and subsidiaries as of December 31, 2010, and the related consolidated state of income and comprehensive income, stockholder's equity, and cash flows for the year then ended, as well as effectiveness of internal controls over financial reporting as of December 31, 2010.

On May 4, 2011, the Company disclosed that Mr. Wenbing Christopher Wang resigned from the Company's Board of Directors.  Mr. Wang's letter stated "[r]ecent events, including but not limited to the inconsistencies between representations made by the CBEH's management to the Board of Directors, have eroded my confidence and led me to conclude that I cannot continue to serve as a director of CBEH."

## III.   ARGUMENT

### A.   The Shackleton Trust Should Be Appointed Lead Plaintiff

The Shackleton Trust respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B).

#### 1.   The Legal Requirements Under The PSLRA

The PSLRA, 15 U.S.C. §78u-4(a)(1), sets forth procedures for the appointment of a lead plaintiff to oversee class actions brought under the Exchange Act.  Within 20 days after the date on which a class action is filed under the PSLRA, *see* 15 U.S.C. §78u-4(a)(3)(A)(i), the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (i) of the pendency of the action, the claims asserted therein, and the purported class period; and (ii) that, not later than 60 days after the date on which the notice is published,

any member of the purported class may move the court to serve as lead plaintiff of the purported class.

Further, under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiffs filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff:

> (aa)    has either filed the complaint or made a motion in response to a notice. . . ;

> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).  The presumption established above may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either (i) "will not fairly and adequately protect the interests of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit Court has explained that the "Reform Act provides a simple three-step process for identifying the lead plaintiff" pursuant to the criteria set forth in the PSLRA.  *See In re Cavanaugh*, 306 F.3d at 729-30.  As *Cavanaugh* instructed:

> The first step consists of publicizing the pendency of the action, the claims made and the purported class period. In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the "presumptively most adequate plaintiff" – and hence the presumptive lead plaintiff – the one who "has the largest financial interest in the relief sought by

#123953

-6-

the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."  If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.  If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.  The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.

*Id.* (alteration in original) (internal citations and footnotes omitted).  *See also In re Peregrine Systems, Inc. Sec. Litig.*, No. 02-CV-870-J (RBB), 2002 WL 32769239, at *2-4 (S.D.Cal. Oct. 11, 2002).

### 2.    <u>Notice of Pendency</u>

Plaintiff in *Brown v. China Integrated Energy, Inc., et al.*, Case No. CV11-02559 MMM (PLAx), the first-filed action, caused an initial notice to be published on *Business Wire* on March 25, 2011.  *See* Exhibit A to the Bright Decl.  The notice announced that a securities class action had been filed against the defendants herein, and advised purchasers of China Integrated securities that they had sixty days from March 25, 2011 to seek lead plaintiff status.  *See Id.*  The Shackleton Trust has filed this motion before the expiration of the 60-day period from such publication.

#123953

-7-

In addition, and pursuant to the requirements of the PSLRA, the Shackleton Trust has duly signed a certification stating that it is familiar with the factual and legal issues alleged and is willing to serve as a representative plaintiff on behalf of the Class. *See* Bright Decl. Ex. B.

### 3. The Shackleton Trust Believes It Has The Largest Financial Interest In The Relief Sought By The Class

The Shackleton Trust should be appointed Lead Plaintiff because it believes it has the largest financial interest in the relief sought by the Class.  15 U.S.C. §78u-4(a)(3)(B)(iii).  There is no prescribed method for determining which movant has the largest financial interest.  The Ninth Circuit notes that "the court may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n. 4.  "Many courts apply the following four factors in making the financial interest determination: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Ruland v. InfoSonics Corp.*, No. 06-CV-1231 (BTM) (WMC), 2006 WL 3746716, at *4 (S.D.Cal. Oct. 23, 2006) (citing *Lax v. First Merchant's Acceptance Corp.*, No. 97-C-2715, 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 296 (E.D.N.Y. 1998); and *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993 (N.D.Cal. 1999)).  In light of each of these factors, the Shackleton Trust believes it has the largest financial interest in the outcome of this lawsuit.

As the Shackleton Trust's Certificate of Plaintiff confirms, it purchased approximately 13,500 shares of China Integrated common stock on a gross basis during the Class Period.  See Bright Decl., Ex. B.

The Shackleton Trust did not sell any shares prior to April 20, 2011, the alleged end of the Class Period.  Therefore, The Shackleton Trust's net purchases of common stock were also 13,500 shares.  In addition, the Shackleton Trust has

#123953

-8-

net expenditures of approximately $99,205.40 for China Integrated common stock prior to April 20, 2011.  As a result of the revelation of China Integrated's misconduct, the Shackleton Trust suffered approximately $99,205.40 in losses. The magnitude of the Shackleton Trust's financial interest in this litigation can be summarized as follows:

| Factor | Shackleton Trust's Position |
| --- | --- |
| Gross Purchases: | 13,500 shares |
| Net Purchases: | 13,500 shares |
| Net Expenditures: | $99,205.40 |
| Approximate Loss: | $99,205.40 |

On April 20, 2011, the NASDAQ Stock Market announced that trading was halted in China Integrated Energy for "additional information requested" from the Company and will remain halted until China Integrated Energy fully satisfies NASDAQ's request for additional information.  As of this filing, trading is still halted.  Therefore, the Shackleton Trust total loss is approximately $99,205.40.[3]

Accordingly, the Shackleton Trust believes that it has the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

### 4.   The Shackleton Trust Otherwise Satisfies The Requirements Of Rule 23

The Shackleton Trust should be appointed Lead Plaintiff because it also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  On a motion to serve as Lead Plaintiff, the movant need only make a preliminary

---

[3]   For purposes of this calculation, the Shackleton Trust's remaining 13,500 shares were assigned a value of $0.00 because of the continued suspension of trading.  If a value of $1.84 is assigned, the last closing price before trading was halted, the Shackleton Trust's loss is $74,365.40.

-9-

#123953

showing that it satisfies the typicality and adequacy requirements of Rule 23. *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D.Cal. 2005) (citing *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D.Cal. 1999) (stating that, at this stage of the litigation, nothing more than a preliminary showing is required)).  The Shackleton Trust unquestionably satisfies both requirements in this case.

The Shackleton Trust's claims are typical of the claims of other Class members.  "The 'typicality' requirement is satisfied when the named plaintiffs have (1) suffered the same injuries as class members; (2) as a result of the same course of conduct; and (3) their claims are based on the same legal issues."  *Zucker v. Zoran Corp.*, No. 06-4843 (WHA), 2006 WL 3591156, at *3 (N.D.Cal. Dec. 11, 2006) (citing *Armour v. Network Assoc., Inc.*, 171 F.Supp.2d 1044, 1050 (N.D.Cal. 2001)); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The Shackleton Trust's claims in this action arise from the very same course of misconduct at China Integrated as the claims of the other Class members – *i.e.*, the artificial inflation of China Integrated stock caused by Defendants' fraudulent public disclosures.  *See, e.g., Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D.Cal. 2005) (finding a Lead Plaintiff movant's claim to be typical where the movant like all class members, "(1) purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be artificially inflated by defendants' materially false and misleading statements and/or omissions, and (3) suffered damage as a result."); *see also Ferrari v. Gisch,* 225 F.R.D. 599, 606 (C.D.Cal. 2004).

The Shackleton Trust likewise satisfies the adequacy requirement of Rule 23.  "The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive."  *Autobytel*, 226 F.R.D. at 667 (citing *In re Northern District of California, Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir.

1982)).  The Shackleton Trust satisfies each of these elements of the adequacy requirement.

The Shackleton Trust will adequately represent the Class because its interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  Indeed, the Shackleton Trust seeks identical relief on identical claims based on identical legal theories.  There are, furthermore, no facts suggesting that any actual or potential conflict of interest or other antagonism exists between the Shackleton Trust and other Class members.

The Shackleton Trust has also submitted a Certification affirming his understanding of the duties owed to Class members through its commitment to oversee the prosecution of this Class action.  *See* Bright Decl., Ex. B.  Through that Certification, the Shackleton Trust accepts the fiduciary obligations it will assume if appointed Lead Plaintiff in this action.

Finally, the Shackleton trust has demonstrated its adequacy through the selection of Gold Bennett Cera & Sidener LLP as counsel to represent the Class.  As discussed more fully below, Gold Bennett Cera & Sidener LLP is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to conduct complex securities class action litigation effectively.

## B.     The Court Should Approve the Shackleton Trust's Selection Of Lead Counsel

The Court should approve the Shackleton Trust's choice of the law firm of Gold Bennett Cera & Sidener LLP to serve as Lead Counsel.  Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, codified at 15 U.S.C. §78u-4(a)(B)(v), the Lead Plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval.  The Shackleton Trust has selected and retained the law firm of Gold Bennett Cera & Sidener LLP.  The firm has a long history of prosecuting

#123953

-11-

1  cases such as this case.  These cases have resulted in recoveries in excess of $2

2  billion.  A copy of the firm's resume is attached to the Bright Decl. as Exhibit C.

3       Gold Bennett Cera & Sidener LLP has the requisite experience and

4  resources to obtain an excellent result for the Class.  Bright Decl., Ex. C.  Indeed,

5  the court in *In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 515 (W.D. Pa. 2003), a

6  securities fraud class action prosecuted by the firm, stated as follows:

7          Having thus initially expressed our confidence in [Gold

8          Bennett Cera & Sidener's] abilities, the Court has not
           since been disappointed.  On the contrary, [Gold Bennett

9          Cera & Sidener] have shown themselves to be attorneys

10         of the highest caliber, at all times prosecuting this action
           with a high degree of skill and professionalism.

11

12      Accordingly, the Court should approve the Shackleton Trust's selection of

13 Gold Bennett Cera & Sidener LLP as Lead Counsel.

14     **C.**    **The Related Actions Should Be Consolidated**

15      Rule 42(a) grants the Court discretion to consolidate "actions involving a

16 common question of law or fact."  The Court has "broad discretion under this rule

17 to consolidate cases pending in the same district."  *Investors Research Co. v.*

18 *United States Dist. Court*, 877 F.2d 777 (9th Cir. 1989).  In addition, the Exchange

19 Act dictates that consolidation should occur where, as here, more than one action

20 asserts "substantially the same claim."  15 U.S.C. §78u-4(a)(3)(B)(ii); *see also*

21 *Siegall v. Tibco Software, Inc.,* No. C-05-2146 (SBA), 2006 WL 1050173, at *2

22 (N.D.Cal. Feb 24, 2006) ("[T]he Private Securities Litigation Reform Act

23 ("PSLRA") directs that cases should be consolidated when more than one action is

24 filed on behalf of a class asserting substantially the same claim or claims.").  The

25 actions, however, need not be identical before they may be consolidated.  *See, e.g.,*

26 *Kaplan v. Gelfond*, 240 F.R.D. 88, 91-92 (S.D.N.Y. 2001) (differing class periods

27 and different defendants do not prevent consolidation).

28

#123953

-12-

Upon establishing that common questions of law exist, "a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by the consolidation." *Southwest Marine Inc. v. Triple A Machine Shop, Inc.*, 720 F.Supp. 805, 807 (N.D. Cal. 1989). Securities class actions are particularly appropriate for consolidation. *See Takeda v. Turbodyne Techs., Inc.,* 67 F.Supp. 2d 1129, 1130 (C.D. Cal. 1999) (stating that securities class actions should be consolidated "in the interest of judicial economy and to relieve the parties and absent class members of the burdens associated with participating in duplicative litigation . . . .").

There are four Related Cases:

| Case Name | Original Case Number | Date Filed |
|---|---|---|
| *Brown v. China Integrated Energy, Inc., et al.* | CV11-2559 MMM (PLAx) | March 25, 2011 |
| *Levy v. China Integrated Energy Inc., et al.* | CV11-2717 MMM (PLAx) | March 31, 2011 |
| *Negroni v. China Integrated Energy Inc., et al.* | CV11-3675 GW (PJWx) | April 28, 2011 |
| *Grunfeld v. China Integrated Energy Inc., et al.* | CV11-4093 JAK (SHx) | May 12, 2011 |

Consolidation is necessary because these cases have the same core defendants and allege the same basis of liability: Sections 10(b) and 20(a) of the Exchange Act. Further, each of these actions alleges that defendants made materially false statements during the Class Period about China Integrated's financial and business condition, which in turn artificially inflated the market price

#123953

-13-

1   for China Integrated securities.  In light of the common questions of law and fact

2   and in the interests of promoting judicial efficiency and conservation of resources,

3   consolidation of these related actions is appropriate under Fed. R. Civ. P. 42(a).

4   **IV.**   **CONCLUSION**

5           For the foregoing reasons, the Shackleton Trust respectfully requests that the

6   Court: (i) appoint it as Lead Plaintiff pursuant to the PSLRA; and (ii) approve its

7   selection of Gold Bennett Cera & Sidener LLP as Lead Counsel for the Class; and

8   (iii) consolidate all related cases; and grant such other and further relief as the

9   Court may deem just and proper.

10  Dated:  May 24, 2011                            Respectfully submitted,

11
                                                    GOLD BENNETT CERA & SIDENER LLP
12

13
                                                    By: s/Thomas C. Bright
14                                                  Solomon B. Cera

15                                                  Thomas C. Bright

16                                                  595 Market Street, Suite 2300
                                                    San Francisco, California 94105
17                                                  Tel: (415) 777-2230

18                                                  Fax: (415) 777-5189
                                                    scera@gbcslaw.com
19                                                  tbright@gbcslaw.com

20
                                                    Attorneys for The Shackleton Family
21                                                  Revocable Trust

22

23

24

25

26

27

28

#123953                                                                          -14-

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on May 24, 2011, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification

4  of such filing to all counsel of record in this action.

5     I certify under penalty of perjury under the laws of the United States of

6  America that the foregoing is true and correct.  Executed on May 24, 2011.

7                                           s/Thomas C. Bright

8                                           Thomas C. Bright

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28