MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
MICHIYO MICHELLE FURUKAWA
(SBN 234121)
mfurukawa@milberg.com
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

Attorneys for Movant City of Lansing and
Proposed Lead Counsel

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LARRY BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>          vs.<br><br>CHINA INTEGRATED ENERGY, INC., GAO XINCHENG, ALBERT C. PU, and LI GAIHONG,<br><br>                      Defendants. | Case No. CV 11-02559 MMM (PLAx)<br><br>CLASS ACTION<br><br>CITY OF LANSING'S NOTICE OF MOTION AND MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL SELECTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:       August 29, 2011<br>TIME:       10:00 a.m.<br>CTRM:      780<br>JUDGE:     Hon. Margaret M. Morrow |

[Caption continued on next page]

| | |
|---|---|
| JACOB LEVY, Individually and on Behalf of All Others Similarly Situated, | ) Case No. CV 11-02717 MMM<br>) (PLAx) |
| Plaintiff, | ) |
| vs. | ) |
| CHINA INTEGRATED ENERGY, INC., XINCHENG GAO, ALBERT C. PU, and GAIHONG LI, | ) |
| Defendants. | ) |
| | ) |
| NOEL X. NEGRONI, Individually and on Behalf of All Others Similarly Situated, | ) Case No. CV 11-03675 GW (PJWx) |
| Plaintiff, | ) |
| vs. | ) |
| CHINA INTEGRATED ENERGY, INC., GAO XINCHENG, ALBERT C. PU, and LI GAIHONG, | ) |
| Defendants. | ) |
| AARON GRUNFELD, Individually and on Behalf of All Others Similarly Situated, | ) Case No. CV 11-04993 JAK (SHx) |
| Plaintiff, | ) |
| vs. | ) |
| CHINA INTEGRATED ENERGY, INC., XINCHENG GAO, ALBERT C. PU, and GAIHONG LI, | ) |
| Defendants. | ) |

# Table of Contents

**Page**

NOTICE OF MOTION ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES............................ 1

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL BACKGROUND.................................................................... 2

ARGUMENT............................................................................................ 4

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED ................... 4

II.    CITY OF LANSING SHOULD BE  APPOINTED LEAD
PLAINTIFF ........................................................................................... 5

    A.    THE PSLRA'S LEAD PLAINTIFF  PROCEDURAL
PREREQUISITES HAVE BEEN MET ............................................ 5

    B.    CITY OF LANSING IS "THE MOST ADEQUATE
PLAINTIFF" AND SHOULD BE APPOINTED LEAD
PLAINTIFF......................................................................................... 6

          1.    City of Lansing Has the Largest Financial Interest ................... 7

          2.    City of Lansing Satisfies the Requirements of Rule 23 ............ 7

                  a.    City of Lansing's Claims Are Typical of the
Claims of All the Class Members ................................. 9

                  b.    City of Lansing Will Adequately  Represent the
Class ........................................................................... 10

          3.    City of Lansing Is An Institutional Investor............................ 10

III.    THE COURT SHOULD APPROVE CITY OF LANSING'S
CHOICE OF LEAD COUNSEL.................................................... 11

IV.    CONCLUSION ......................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Burch v. SLM Corp.*,
No. 08 Civ. 1029, 2008 U.S. Dist. LEXIS 55423
(S.D.N.Y. July 23, 2008) ........................................................................ 7

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ........................................................... 2, 5, 7

*In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. Cal. 2009) ........................................................ 11

*Crossen v. CV Therapeutics*,
No. 03-03709, 2005 U.S. Dist. LEXIS 41396 (N.D. Cal. Aug. 9, 2005) ........... 9

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004) ............................................................. 2

*Gluck v. CellStar Corp.*,
976 F. Supp. 542, 549 (N.D. Tex. 1997) ............................................... 11

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) ............................................................ 6

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................. 9

*Hufnagle v. Rino Int'l Corp.*,
No. CV 10-8695, 2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14,
2011) ................................................................................................. 5, 7, 11

*In re Equity Funding Corp. of Am. Sec. Litig.*,
416 F. Supp. 161 (C.D. Cal. 1976) ......................................................... 4

*Lax v. First Merchs. Acceptance Corp.*,
No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ........... 6

ii

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb.
   15, 2011) ...................................................................................................... 7

*Richardson v. TVIA, Inc.*,
   No. C-06-6304, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ......... 7

*Schriver v. Impac Mortgage Holdings, Inc.*,
   No. SACV-06-31, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1,
   2006) ........................................................................................................... 8

*Siegall v. Tibco Software, Inc.*,
   No. 05-2146, 2006 U.S. Dist. LEXIS 26780 (N.D. Cal. Feb. 24, 2006) ............ 8

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ........................................................ 5, 10

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) ............................................................ 4

**DOCKETED CASES:**

*Brown v. China Integrated Energy, Inc.*,
   No. CV 11-2559 (C.D. Cal. filed Mar. 25, 2011) ...................................... 1, 3, 5

*Grunfeld v. China Integrated Energy, Inc.*,
   No. CV 11-4093 (C.D. Cal. filed May 12, 2011) ....................................... 1, 3, 5

*Levy v. China Integrated Energy, Inc.*,
   No. CV 11-2717 (C.D. Cal. filed Mar. 31, 2011) .......................................... 1, 5

*Negroni v. China Integrated Energy, Inc.*,
   No. CV 11-3675 (C.D. Cal. filed Apr. 28, 2011) ....................................... 1, 3, 5

*Watkins v. China Integrated Energy Inc.*,
   No. 1:11 CV 3516 (S.D.N.Y. filed May 23, 2011) ........................................... 2

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(a) ........................................................................... passim

15 U.S.C. §§ 78j(b) and 78t(a) .............................................................. passim

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ passim

Fed. R. Civ. P. 42 ............................................................................................ 1, 4, 6

Local Rule 7-3 ............................................................................................ 2

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

3

  PLEASE TAKE NOTICE that on August 29, 2011, at 10:00 a.m., or as soon

4

as this matter may be heard in Courtroom 780 of the Honorable Margaret M.

5

Morrow, in the United States District Court for the Central District of California,

6

Edward R. Roybal Federal Building and Courthouse, 255 East Temple Street, Los

7

Angeles, California 90012, the City of Lansing Employees Retirement System and

8

the City of Lansing Police and Fire Retirement System (collectively the "City of

9

Lansing" or "Movant"), will, and hereby does, move for an order: (1) consolidating

10

any related actions filed in or transferred to this District for all purposes pursuant

11

to Fed. R. Civ. P. 42(a); (2) appointing Movant as Lead Plaintiff pursuant to the

12

PSLRA; (3) approving Movant's selection of Milberg LLP ("Milberg") as lead

13

counsel in this action and in any subsequently filed and/or related cases; and (4)

14

granting such other and further relief as the Court may deem just and proper.

15

  This motion is based on the attached Memorandum of Points and

16

Authorities, the Declaration of Jeff S. Westerman in support thereof, all pleadings,

17

records and files in this action, any evidence presented at or before the hearing,

18

including any written or oral argument as may be presented to the Court, and all

19

other matters of which the Court may take judicial notice.

20

21

22

23

24

25

26

27

28

CITY OF LANSING'S NOTC OF MOT & MOT FOR CONSOLIDATION, APPOINTMENT OF LEAD PLTF & APPROVAL OF LEAD
COUNSEL SELECTION; MPA IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The above-captioned actions ("Actions") are securities class actions alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") 15 U.S.C. §§ 78j(b) and 78t(a). The first-filed *Brown* action was filed on March 25, 2011.

The City of Lansing Employees Retirement System and the City of Lansing Police and Fire Retirement System (collectively the "City of Lansing" or "Movant"), public pension funds managed by the City of Lansing Public Pension Funds Retirement Office, which share the same City Attorney, Mr. Brigham Smith, respectfully submits this Memorandum of Law in support of its motion, pursuant to the PSLRA, for an order: (1) consolidating the above-captioned actions pursuant to Fed. R. Civ. P. 42; (2) appointing City of Lansing as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); (3) approving Movant's selection of Milberg LLP ("Milberg") as Lead Counsel in this action and in any subsequently filed and/or related cases; and (4) granting such other and further relief as the Court may deem just and proper.

The Actions against corporate Defendant China Integrated Energy, Inc. ("China Integrated" or the "Company") and certain of its officers and directors, should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). The Actions are captioned: *Brown v. China Integrated Energy, Inc.*, No. CV 11-2559 (C.D. Cal. filed Mar. 25, 2011); *Levy v. China Integrated Energy, Inc.*, No. CV 11-2717 (C.D. Cal. filed Mar. 31, 2011); *Negroni v. China Integrated Energy, Inc.*, No. CV 11-3675 (C.D. Cal. filed

Apr. 28, 2011); and *Grunfeld v. China Integrated Energy, Inc.*, No. CV 11-4093 (C.D. Cal. filed May 12, 2011).[1]

Pursuant to the PSLRA, the Court should appoint as lead plaintiff the movant with the largest financial interest in the relief sought by the class that also meets the adequacy and typicality prongs of Fed. R. Civ. P. 23. *See In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); *Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004). City of Lansing incurred losses of approximately $171,219 on its transactions in China Integrated stock due to Defendants' conduct. Movant believes that it has the largest financial interest of any other movant, is typical, and will more than adequately represent the interests of the Class.[2]

City of Lansing's selected counsel, Milberg, should be appointed Lead Counsel. As discussed below, Milberg is well qualified to lead this litigation, and City of Lansing's selection of Lead Counsel should be approved.

## FACTUAL BACKGROUND[3]

China Integrated is a Delaware corporation with its principal executive offices in Dongxin Century Square, 7th Floor, Hi-Tech Development District, in the People's Republic of China. China Integrated is an integrated energy company that distributes finished oil and heavy oil products, produces and sells biodiesel, and operates retail gas stations, all within China.

Throughout the Class Period, from March 31, 2010, through April 21, 2011 (the "Class Period"), Defendants made false and misleading statements and material omissions regarding China Integrated's business, operations, management

---

[1] A related securities class action lawsuit was recently filed in the United States District Court for the Southern District of New York, captioned: *Watkins v. China Integrated Energy, Inc.*, No. 11-CV-3516 (S.D.N.Y. filed May 23, 2011).

[2] Pursuant to Local Rule 7-3, Movant's counsel has communicated with the law firms that filed actions in this matter and discussed City of Lansing's intent to file this motion. Because the PSLRA allows non-party class members to file motions, however, it is impossible to identify all the movants or their counsel in advance of the motion.

[3] The factual summary is taken from allegations common to all of the actions.

and intrinsic value, causing Movant and other Class members to purchase China Integrated securities at artificially inflated prices.  As a result of Defendants' false and misleading statements, China Integrated stock traded at artificially inflated prices during the Class Period.[4]

Specifically, Defendants failed to disclose that: (1) certain transactions and acquisitions were related party transactions or involved related parties (such as the acquisitions of the Chongqing Tianrun biodiesel plant and the Shenmu gas station); (2) China Integrated's ownership interest in certain key Company assets had been wrongfully transferred to the CEO's son); and (3) as a result of the wrongful transfer of certain assets and certain related party transactions, the Company's assets, business, operations and intrinsic value were materially less than reported to investors in press releases and SEC filings.

On March 16, 2011, the first disclosure of improper acquisitions and the wrongful transfer of cash by China Integrated to the son of the Company's CEO, was reported by Sinclair Upton Research.  On this news, the Company's stock declined by $0.95 per share, or 16%, to close at $5 per share, on heavy trading volume. The next day, on March 17, 2011, as  this disclosure continued to be disseminated, the Company's stock price fell from an opening price of $4.41 to a closing price of $3.52 (a 20% drop) also on heavy trading volume.

On March 23, 2011, the Company issued a letter addressed to the China Integrated shareholders that denied certain allegations made by Sinclair Upton Research, including one related party transaction.  However, the letter also effectively confirmed certain other allegations that had been made, including that

---

[4] The *Brown, Levy*, and *Negroni* actions define the Class Period from March 31, 2010, through March 16, 2011, however, on May 6, 2011, the plaintiff in the *Brown* action filed an amended complaint revising the Class Period to March 31, 2010, to April 21, 2011.  The *Grunfeld* action defines the Class Period from March 31, 2010, to April 20, 2011.

CITY OF LANSING'S NOTC OF MOT & MOT FOR CONSOLIDATION, APPOINTMENT OF LEAD PLTF & APPROVAL OF LEAD COUNSEL SELECTION; MPA IN SUPPORT THEREOF

RMB 20 million had been paid for an interest in a Company that China Integrated had then transferred to the CEO's son.

On April 5, 2011, after market close, the Company announced the intent of its Audit Committee to conduct an independent investigation into "various issues raised by certain individuals."

After the market close on April 20, 2011, the NASDAQ Stock Market announced that trading was halted in China Integrated and would "remain halted until China Integrated Energy, Inc. has fully satisfied NASDAQ's request for additional information." Since that announcement the Company's stock has remained halted rendering it unsalable and worthless. China Integrated last traded price was $1.84 per share, executed on April 20, 2011.

Defendants' materially false and misleading statements during the Class Period resulted in Movant and other members of the Class purchasing the Company's common stock at artificially inflated prices and incurring damages when the truth was disclosed.

## ARGUMENT

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Pursuant to the PSLRA, the Court should first rule on motions to consolidate before addressing the lead plaintiff/lead counsel issues. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 175 (C.D. Cal. 1976).

The four actions pending before this Court are suited for consolidation. The class action complaints are all brought by purchasers of China Integrated common stock. The complaints allege near identical class periods and contain similar allegations charging Defendants with making false and misleading statements

4

concerning the Company's financials and certain related party transactions.  *See Brown* Am. Compl. ¶¶ 1-2, 24-44, *Levy* Compl. ¶¶ 13-23, *Negroni* Compl.¶¶ 1-2, 24-36, and *Grunfeld* Compl. ¶¶ 1,3-9.

"Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money."  *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695, 2011 U.S. Dist. LEXIS 19771, at *6-7 (C.D. Cal. Feb. 14, 2011) (Fairbank, J.). Differences between class periods, such as here, do not defeat the appropriateness of consolidation for federal securities cases based upon the same underlying facts.  *See  Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) ("Courts have generally held that differing class periods alone will nor [sic] defeat consolidation or create a conflict.").  Although the Actions are not identical, their common factual and legal bases, including overlapping class periods, legal claims and Defendants, warrant consolidation of the Actions.

## II.    CITY OF LANSING SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    THE PSLRA'S LEAD PLAINTIFF PROCEDURAL PREREQUISITES HAVE BEEN MET

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).  This procedure is further detailed by the Ninth Circuit's decision in *In re Cavanaugh*, 306 F.3d at 729-30 (9th Cir. 2002).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).

5

This requirement was met by the plaintiff in the first-filed *Brown* action, who issued notice through *Business Wire* on March 25, 2011, the same day the initial complaint was filed.[5]   This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, or by May 24, 2011.   Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they filed a complaint in the Actions.   15 U.S.C. § 78u-4(a)(3)(A) and (B).   As City of Lansing's motion is being filed on May 24, 2011, it is therefore timely.

### B.   CITY OF LANSING IS "THE MOST ADEQUATE PLAINTIFF" AND SHOULD BE APPOINTED LEAD PLAINTIFF

Pursuant to the PSLRA, the lead plaintiff should be the "most adequate plaintiff," which is be identified as follows:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title [] is the person or group of persons that --
>
> (aa)   has either filed the complaint or made a motion in response to a notice…;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

---

[5]   *See* Westerman Decl. Ex. C.  National news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *6 (N.D. Ill. Aug. 6, 1997).

### 1.    City of Lansing Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action.  *See Hufnagle*, 2011 U.S. Dist. LEXIS 19771, at *9 (citing *In re Cavanaugh*, 306 F.3d at 730).

Because the PSLRA does not provide a method for determining the relative financial interests of lead plaintiff movants, courts have adopted various methodologies.  The most widely accepted looks at the movant's losses as "most determinative in identifying the plaintiff with the largest financial loss." *Richardson v. TVIA, Inc.*, No. C-06-06304, 2007 U.S. Dist. LEXIS 28406, at *13-14 (N.D. Cal. Apr. 16, 2007) (appointing movant with the greatest loss noting it was the "most determinative" factor to consider); *see also Perlmutter v. Intuitive Surgical, Inc.,* No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *37 (N.D. Cal. Feb. 15, 2011) (noting that approximate losses are the "most important factor"); *Burch v. SLM Corp.*, No. 08 Civ. 1029, 2008 U.S. Dist. LEXIS 55423, at *9-10 (S.D.N.Y. July 23, 2008) (noting that "[t]he magnitude of the loss is the most significant factor," in determining the largest financial interest).

Losses can be determined using either the First-In-First-Out ("FIFO") methodology to offset purchases and sales or the Last-in-First-Out method ("LIFO").   Under FIFO City of Lansing experienced losses of approximately $171,219, while under LIFO, it had losses of approximately $146,215. [6]

### 2.    City of Lansing Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See In re Cavanaugh*, 306 F.3d. at 730.  Rule 23(a) provides that a

---

[6] *See also* Westerman Decl. Ex. B (Loss Chart detailing Movant's transactions).

7

party may serve as a class representative if the following four requirements are satisfied:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *Siegall v. Tibco Software, Inc.*, No. C 05-2146, 2006 U.S. Dist. LEXIS 26780, at *14-15 (N.D. Cal. Feb. 24, 2006) ("In the context of determining the appropriate lead plaintiff . . . , the requirements of 'typicality' and adequacy of representation are the key factors."). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV-06-31, 2006 U.S. Dist. LEXIS 40607, at *15-16 (C.D. Cal. May 1, 2006) ("At the lead plaintiff appointment stage, the Rule 23 inquiry is not as searching as it would be on a motion for class certification; the prospective lead plaintiff need only make a prima facie showing that it meets the typicality and adequacy factors."). As detailed below, City of Lansing satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. City of Lansing has claims that are typical of those of other Class Members and can adequately serve as Lead Plaintiff.

1

2

### a. City of Lansing's Claims Are Typical of the Claims of All the Class Members

3

4    Under Rule 23(a)(3), typicality exists where "the claims . . . of the

5    representative parties" are "typical of the claims . . . of the class."  The typicality

6    requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims

7    arise from the same event or course of conduct that gives rise to claims of other

8    class members, and when the claims are based on the same legal theory.  *See*

9    *Crossen v. CV Therapeutics*, No. C 03-03709, 2005 U.S. Dist. LEXIS 41396, at

10   *13-14 (N.D. Cal. Aug. 9, 2005).   The requirement that the proposed class

11   representatives' claims be typical of the claims of the class does not mean that the

12   claims must be identical. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

     Cir. 1998).

13   In this case, the typicality requirement is met because the claims of City of

14   Lansing are identical to, and do not compete or conflict with, the claims of the

15   other Class members.  Movant satisfies the typicality requirement because, just like

16   all other Class members, it: (1) purchased China Integrated securities during the

17   Class Period; (2) purchased or otherwise acquired China Integrated securities at

18   prices artificially inflated as a result of the allegedly materially false and

19   misleading statements and/or omissions; and (3) suffered economic loss when the

20   price of China Integrated common stock declined when the fraud was revealed.

21   Therefore, City of Lansing's claims are like the claims of each member of the class

22   and "arise from the same event or course of conduct that gives rise to the claims of

23   other class members."  *Crossen*, 2005 U.S. Dist. LEXIS 41396, at *13-14.

24   City of Lansing is not subject to any unique or special defenses.  Thus, City

25   of Lansing meets the typicality requirement of Fed. R. Civ. P. Rule 23 because its

26   claims are the same as the claims of the other Class members

27

28

### b. City of Lansing Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to whether the interests of the movant are aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).  *See also Takeda*, 67 F. Supp. 2d at 1137.

City of Lansing's interests are clearly aligned with those of the other members of the Class.  Not only is there no evidence of antagonism between City of Lansing and the other Class members, but Movant has a significant, compelling interest in prosecuting these Actions to a successful conclusion based upon the large financial loss of approximately $171,219 that City of Lansing has suffered as a result of the wrongful conduct alleged in these Actions.  This motivation, combined with City of Lansing's identical interests with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. Because of City of Lansing's common interests with the Class members, its clear motivation and ability to vigorously pursue these Actions, and its selection of competent counsel, City of Lansing meets the adequacy requirement of Fed. R. Civ. P. Rule 23.

### 3. City of Lansing Is An Institutional Investor

The legislative history of the PSLRA provides further support for the appointment of City of Lansing as Lead Plaintiff, as City of Lansing is an institutional investor of the very kind envisioned by Congress in its enactment of the PSLRA -- a sophisticated institutional investor with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the

10

courts by improving the quality of representation in securities class actions"); *see also Hufnagle*, 2011 U.S. Dist. LEXIS 19771, at *13 ("the PSLRA's legislative history expressed a preference for institutional investors []to serve as lead plaintiffs.").

As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, City of Lansing will actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck v. CellStar Corp.*, 976 F. Supp. 542, 549 (N.D. Tex. 1997)(citation omitted).

## III.   THE COURT SHOULD APPROVE CITY OF LANSING'S CHOICE OF LEAD COUNSEL

City of Lansing has selected a law firm that is highly experienced in prosecuting securities class actions to represent Movant and the Class, satisfying the requirements of the PSLRA.   Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class.   The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).   *See also In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. Cal. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").   Movant has selected and retained Milberg to serve as Lead Counsel for the Class.   Milberg has successfully prosecuted numerous securities class actions on behalf of injured investors.   *See* Westerman Decl. Ex. D (firm résumé of Milberg).

Milberg has served as lead or co-lead counsel in many high-profile class actions, and has recovered billions of dollars for investors.   *See e.g. In re Tyco Int'l*

11

*Ltd., Sec. Litig*., MDL No. 02-1335-B (D.N.H. 2002) ($3.2 billion); *In re Nortel Networks Corp., Sec. Litig.*, No. 01-CV-1855 (S.D.N.Y.) ($1.1 billion); *In re Lucent Techs., Inc., Sec. Litig*., No. 00-CV-621 (D.N.J.) ($600 million settlement); *In re Raytheon Sec. Litig*., 99-CV-12142 (E.D. Mass.) ($460 million settlement); *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-CV-7527 (N.D. Ill.) (Bucko, J.) ($215 million settlement); and *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.), in which Milberg, as a member of the court-appointed Plaintiffs' Executive Committee, oversaw the efforts of approximately 60 plaintiffs' firms in 310 consolidated securities actions arising from an alleged market manipulation scheme.  In granting final approval to a $586 million settlement on October 5, 2009, the *IPO* court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."  *See id.*

Milberg LLP continues to be widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing, and remains at the forefront in its areas of practice.  In January 2010, in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months.  The jury found *Vivendi* liable for 57 false or misleading class period statements, potentially resulting in a judgment of up to $9 billion.

Jeff S. Westerman, who heads Milberg LLP's Los Angeles office, has practiced in the Central District of California for over 30 years.  Mr. Westerman is active in complex litigation, and moderates panels of lawyers and judges on the topic.  *See* Westerman Decl. Ex. D (Westerman biography).  In his nearly 20 years at Milberg LLP, Mr. Westerman served as lead or co-lead counsel in cases resulting in plaintiff recoveries, and recognized increased value to plaintiffs, totaling more than $800 million.

Currently, Mr. Westerman serves as co-lead counsel on behalf of noteholders involving potential claims of over $1 billion against trustee banks in *In re Medical Capital Securities Litigation*, 10-ml-02145-DOC-RNB, and as interim co-lead counsel in *In re Korean Air Lines, Co., Ltd. Antitrust Litigation*.

Milberg has the resources required to lead this complex litigation to conclusion.   Milberg has over 70 lawyers with a variety of professional backgrounds, including former judges, professors, prosecutors, private defense attorneys, and government lawyers.   Milberg's professional staff also includes a team of full-time investigators, who are managed by a 27-year veteran of the Federal Bureau of Investigation, and numerous full-time forensic accountants.   In one case, Milberg's investigative team assisted counsel in being "at least eighteen months ahead of the United States Department of Justice in ferreting out," the challenged unlawful conduct.   *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003).   Milberg also has a team of in-house electronic discovery experts that provides attorneys (including other plaintiffs' counsel) with immediate access to and control over the discovery process not available with outside vendors, while keeping costs down.   As lead counsel Milberg will commit significant resources to this litigation to the benefit of the Class and vigorously litigate this matter to conclusion.

## IV.   CONCLUSION

For the reasons stated above, Movant satisfies the requirements of the PSLRA for appointment as the most adequate plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).   As the most adequate plaintiff, Movant respectfully requests that the Court: (1) consolidate the related actions; (2) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (3) approve Movant's selection of Milberg as lead counsel in this action and in any

subsequently filed and/or related cases; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: May 24, 2011

MILBERG LLP
JEFF S. WESTERMAN
MICHIYO MICHELLE FURUKAWA


*/s/ Jeff S. Westerman*
JEFF S. WESTERMAN

One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
E-mail: jwesterman@milberg.com
          mfurukawa@milberg.com

MILBERG LLP
PAUL F. NOVAK
ANDREI V. RADO
ANNE MARIE VU
One Pennsylvania Plaza, 48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  pnovak@milberg.com
            arado@milberg.com
            avu@milberg.com

*Attorneys for Movant City of Lansing
and Proposed Lead Counsel*

14

DECLARATION OF SERVICE BY CM/ECF AND/OR MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, employed in the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los Angeles, California 90071-3149.

2.     Declarant hereby certifies that on May 24, 2011, declarant served the CITY OF LANSING'S NOTICE OF MOTION AND MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL SELECTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF by electronically filing the foregoing document listed above by using the Case Management/ Electronic Case filing system.

3.     Declarant further certifies:

☐     All participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system

☒     Participants in the case who are registered CM/ECF users will be served by the court's CM/ECF system.  Participants in the case that are not registered CM/ECF users will be served by First-Class Mail, postage pre-paid or have dispatched to a third-party commercial carrier for delivery to the non-CM/ECF participants.

4.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of May, 2011, at Los Angeles, California.

_____
CECILLE CHAFFINS

15

CITY OF LANSING'S NOTC OF MOT & MOT FOR CONSOLIDATION, APPOINTMENT OF LEAD PLTF & APPROVAL OF LEAD COUNSEL SELECTION; MPA IN SUPPORT THEREOF

## SERVICE LIST
### *Brown v. China Integrated Energy*
2:11cv2559-MMM (PLAx)

| | |
|---|---|
| Laurence M. Rosen<br>THE ROSEN LAW FIRM PA<br>333 South Grand Avenue, 25th Floor<br>Los Angeles, CA 90071<br>213-785-2610<br>Fax: 213-226-4684<br>Email: lrosen@rosenlegal.com | *Attorneys for Plaintiff Larry Brown* |
| Howard G. Smith<br>LAW OFFICES OF HOWARD G. SMITH<br>3070 Bristol Pike, Suite 112<br>Bensalem, PA 19020<br>215-638-4847<br>Fax: 215-638-4867<br>Email: legul2010@aol.com | *Attorneys for Plaintiff Jacob Levy* |
| Lionel Zevi Glancy<br>Michael Marc Goldberg<br>GLANCY BINKOW & GOLDBERG LLP<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067<br>310-201-9150<br>Fax: 310-201-9160<br>Email: lglancy@glancylaw.com<br>mmgoldberg@glancylaw.com | |
| Lionel Zevi Glancy<br>Peter A. Binkow<br>Michael Marc Goldberg<br>GLANCY BINKOW & GOLDBERG LLP<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067<br>310-201-9150<br>Fax: 310-201-9160<br>Email: lglancy@glancylaw.com<br>mmgoldberg@glancylaw.com<br>pbinkow@glancylaw.com | *Attorneys for Plaintiff Noel X Negroni* |

16

| | |
|---|---|
| Justin B. Farar<br>KAPLAN FOX & KILSHEIMER LLP<br>1801 Century Park East, Suite 1095<br>Los Angeles, CA 90067<br>310-785-0800<br>Fax: 310-785-0897 | *Attorneys for Plaintiff Aaron Grunfeld* |
| Laurence D King<br>Linda M Fong<br>KAPLAN FOX & KILSHEIMER LLP<br>350 Sansome Street, Suite 400<br>San Francisco, CA 94104<br>415-772-4700<br>Fax: 415-772-4707<br>Email: lking@kaplanfox.com<br>lfong@kaplanfox.com | |

CITY OF LANSING'S NOTC OF MOT & MOT FOR CONSOLIDATION, APPOINTMENT OF LEAD PLTF & APPROVAL OF LEAD COUNSEL SELECTION; MPA IN SUPPORT THEREOF