ABRAHAM, FRUCHTER
   & TWERSKY, LLP
IAN D. BERG  (Bar No. 263586)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel:  (213) 943-1356
Fax:  (858) 792-3449
*iberg@aftlaw.com*

ABRAHAM, FRUCHTER
   & TWERSKY, LLP
TAKEO A. KELLAR  (Bar No. 234470)
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:  (858) 792-3448
Fax:  (858) 792-3449
*tkellar@aftlaw.com*

*Counsel for Lead Plaintiff Puerto Rico Teachers Retirement System and Lead Counsel for the Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LARRY BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINA INTEGRATED ENERGY, INC., et al.,<br><br>Defendants. | Case No. CV 11-02559-BRO (PLAx)<br><br><u>CLASS ACTION</u><br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:       February 10, 2015<br>Time:      1:30 p.m.<br>Place:     Courtroom 14<br>Judge:    Hon. Beverly Reid O'Connell |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.   ARGUMENT ..................................................................................................1

    A.   An Expert Is Not Required To Show Market Efficiency .........................................................................................1

    B.   Plaintiffs Have Shown By A Preponderance Of Evidence That China Integrated Stock Traded In An Efficient Market, Invoking A Presumption Of Class-Wide Reliance ................................................3

    C.   Defendants Ignore That "Some Subjectivity" Is Permissible And Dr. Hartzell Used An Objective And Accepted Methodology To Test The Fifth *Cammer* Factor ..................................................................4

        1.   Dr. Roper's Critiques Of The First Quarter 2010 Earnings Announcement Event Are Incorrect ..............................................5

        2.   Dr. Roper's Critiques Of The Chongqing Acquisition Event Are Incorrect .......................................6

        3.   Dr. Roper's Critiques Of The Over-Reaction To The Alfred Little Report Event Are Unfounded ..................................................8

        4.   Dr. Roper's Assessment Of The China Integrated's Response To The Sinclair Upton Report Is Incorrect .......................................9

    D.   Defendants' Other Purported "Hurdles" To Class Certification Are Without Merit ................................................10

II.  CONCLUSION .............................................................................................12

## **TABLE OF AUTHORITIES**

Case                                                                                                          Page

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................................... 4, 7, 9

*Bennett v. Sprint Nextel Corp.*,
    298 F.R.D. 498 (D. Kan. 2014) ............................................................................ 2

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) .............................................................................. 2

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ............................................................... 1, 2, 3, 4

*Erica P. John Fund, Inc. v. Halliburton Co. ("Halliburton I")*,
    131 S. Ct. 2179 (2011) ........................................................................................ 9

*Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")*,
    134 S. Ct. 2398 (2014) .................................................................................... 2, 9

*In re Accredo Health, Inc. Sec. Litig.*,
    2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) ................................. 3

*In re Connetics Corp. Sec. Litig.*,
    257 F.R.D. 572 (N.D. Cal. 2009) ....................................................................... 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
    273 F.R.D. 586 (C.D. Cal. 2009) ............................................................. 2, 10, 11

*In re Deutsche Telekom AG Sec. Litig.*,
    229 F. Supp. 2d 277 (S.D.N.Y. 2002) ............................................................... 11

*In re Diamond Foods, Inc.*,
    295 F.R.D. 240 (N.D. Cal. 2013) .............................................................. 1, 4, 5, 12

*In re Nature's Sunshine Products, Inc. Sec. Litig.*,
    251 F.R.D. 656 (D. Utah 2008) ........................................................................... 7

*In re NetBank, Inc.*,
    259 F.R.D. 656 (N.D. Ga. 2009) .......................................................................... 4

*In re Pfizer Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................................... 12

*In re Retek Sec. Litig.*,
   236 F.R.D. 431 (D. Minn. 2007) ..........................................................................4

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ..........................................................................11

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................3

*Lehocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004) .........................................................................7

*Local 703, I.B. of T. Grocery & Food Employees*
   *Welfare Fund v. Regions Fin. Corp.*,
   762 F.3d 1248 (11th Cir. 2014) .......................................................................2, 3

*McIntire v. ChinaMediaExpress Holdings, Inc.*,
   2014 U.S. Dist. LEXIS 113446 (S.D.N.Y. Aug. 15, 2014) .................................3

*Miller v. Thane Int'l, Inc.*,
   615 F.3d 1095 (9th Cir. 2010) .............................................................................1

*Smilovits v. First Solar, Inc.*,
   295 F.R.D. 423 (D. Ariz. 2013) ......................................................................2, 3

Lead Plaintiff Puerto Rico Teachers Retirement System ("Lead Plaintiff" or "Puerto Rico TRS") and Plaintiff Bristol Investment Fund, Ltd. ("Bristol") submit this Reply in Support of their Motion for Class Certification [Dkt. 301], and in response to Defendants' Memorandum In Opposition to Plaintiffs' Motion for Class Certification [Dkt. 314] ("Opposition" or "Opp.").

In support, Plaintiffs respectfully submit the Expert Rebuttal Report of Dr. Jay Hartzell ("Rebuttal"), filed herewith, in which Dr. Hartzell responds to Dr. Andrew Roper's report dated December 22, 2014 ("Roper Report"). Plaintiffs also respectfully incorporate by reference their Opposition to the Motion to Exclude Dr. Hartzell [Dkt. 317], and the concurrently filed Motion to Exclude Dr. Roper.

## I.  ARGUMENT

The majority of Defendants' Opposition focuses on challenging the evidence of market efficiency – specifically, the evaluation of the cause and effect relationship of news and stock price as set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989). As set forth below, Defendants' assertions and criticisms are without merit, unsupported in law and fact, and based on the unqualified opinion of their purported expert Dr. Roper. Defendants' other purported "hurdles" to certification are equally without merit.

### A.  An Expert Is Not Required To Show Market Efficiency

Plaintiffs, through the evidence presented in Mr. Berg's declaration, do not seek to satisfy an "economic" test, as Defendants portend. (Opp. at 5-6). Rather, they present objective evidence in support of the legal test set forth in *Cammer,* which is followed by the majority of courts. Indeed, the Ninth Circuit recognizes that "'*Cammer* sets out five well-recognized factors designed *to help* make the central determination of efficiency in a particular market,' and provides a useful, if nonexhaustive, guide to analyze whether a market is efficient within the meaning of the fraud-on-the-market theory." *In re Diamond Foods*, *Inc.*, 295 F.R.D. 240, 247 (N.D. Cal. 2013) (quoting *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1103 (9th

Cir. 2010)); *see also Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999).

Although Plaintiffs submit the report of an expert in support of their Motion, it is not novel for Plaintiffs to suggest that an economic expert is not needed to show market efficiency. As noted by Judge Pfaelzer in this District, there is "no requirement for expert testimony" to demonstrate market efficiency. *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 609 n.74 (C.D. Cal. 2009); *see also Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 510 (D. Kan. 2014) ("Nowhere in *Cammer* did the court require an event study or expert opinion to prove the existence of an efficient market"). Indeed, the Supreme Court noted in *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 134 S. Ct. 2398, 2415 (2014), that plaintiffs "can and do" – but not "must" – offer expert opinions, and thus permitted – but did not require – that Defendants to do the same.

The evidence offered by Plaintiffs as exhibits to the declaration of Mr. Berg are not Mr. Berg's opinions; nor are they based on a scientific methodology. The evidence is objective information publicly and widely available that the Court can use to weigh the *Cammer* factors. The Court can easily obtain the same information, and exercise the same common sense in applying the information. The information presented in Mr. Berg's declaration is enough to show market efficiency, even without an event study. As the Eleventh Circuit recently affirmed, "[a]lthough many Circuit Courts have described cause-and-effect as the most important of the *Cammer* factors . . . [defendant] does not point us to any court that has adopted the unwavering evidentiary requirement it urges upon us. Nor could it. Even the *Cammer* court itself did not establish such a strict evidentiary burden at the class certification stage." *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1256 (11th Cir. 2014); *see also Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 435 (D. Ariz. 2013) ("The Court does not agree with Defendants' suggestion that the fifth *Cammer* factor requires a day-by-day showing of market efficiency for class certification. *Cammer* states

that 'it would be helpful' for a plaintiff to 'allege empirical facts' as to the fifth factor, but *Cammer* does not require empirical facts as to every trading day.").

### B. Plaintiffs Have Shown By A Preponderance Of Evidence That China Integrated Stock Traded In An Efficient Market, Invoking A Presumption Of Class-Wide Reliance

Defendants acknowledge that Plaintiffs' expert, Dr. Hartzell, is well-qualified to opine on event studies and market efficiency. However, because Dr. Hartzell's report is unfavorable to Defendants, Defendants argue that Dr. Hartzell rigged the results of his event study and "placed his finger on the scale" to find market efficiency. (Opp. at 1, 8). Defendants are wrong.

Setting aside, for the moment, whether Dr. Hartzell conducted a proper and reliable event study, Defendants and Dr. Roper ignore that Dr. Hartzell's conclusion that China Integrated's shares traded on an efficient market relied on an analysis of all <u>five</u> *Cammer* factors and the <u>three</u> *Krogman* factors.[1] Defendants and Dr. Roper continue to downplay these well-accepted factors used by dozens of courts to evaluate efficiency, without identifying any legal authority disavowing these factors as indicative of market efficiency. Defendants' failure to dispute the first four *Cammer* factors and three *Krogman* factors is fatal to their opposition because numerous courts have found markets sufficiently efficient to invoke the fraud on the market presumption of reliance even when the cause and effect factor was inconclusive.[2]

---

[1] *See Cammer*, 711 F. Supp. at 1285-87; *Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001). Indeed, recent cases since *Halliburton II* was decided continue to hold that the *Cammer* and "the three *Krogman* factors weigh in favor" of concluding market efficiency. *McIntire v. China MediaExpress Holdings, Inc.*, 2014 U.S. Dist. LEXIS 113446, at *38 (S.D.N.Y. Aug. 15, 2014).

[2] *See, e.g., Regions Fin. Corp.*, 762 F.3d at 1256 (rejecting "argument that a finding of market efficiency always requires proof that the alleged misrepresentations had an immediate effect on the stock price."); *First Solar*, 295 F.R.D. at 437 (while court found factor five "was too close to call," there was "no difficulty" finding market efficiency based on satisfaction of three other *Cammer* factors); *In re Accredo Health, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 97621, at

Nevertheless, Defendants' challenge to the fifth *Cammer* factor, "cause and effect," also fails. As set forth herein, Dr. Hartzell's event study methodology and statistical analysis more than satisfies a finding of efficiency to support the presumption of reliance per *Basic v. Levinson*, 485 U.S. 224 (1988).

### C. Defendants Ignore That "Some Subjectivity" Is Permissible And Dr. Hartzell Used An Objective And Accepted Methodology To Test The Fifth *Cammer* Factor

Defendants' argue that Dr. Hartzell's event study is unreliable because he made "subjective" decisions that Dr. Roper disagreed with. However, this Court and several others have explicitly recognized that "designing an event study inevitably requires some subjectivity." August 4, 2014 Order, Dkt. 271 at 12 (citing *Diamond Foods*, 295 F.R.D. at 249). Any subjectivity exercised by Dr. Hartzell was well within the permissive amount allowed by courts, and was properly explained in his report. Indeed, Dr. Hartzell's objective methodology was specifically designed to "take steps to minimize that inevitable subjectivity." August 4, 2014 Order at 12.

Moreover, Dr. Hartzell's methodology has been found to be sufficiently objective and reliable, even when faced with nearly identical criticisms regarding "subjectivity." *See Diamond Foods*, 295 F.R.D. at 249. In this case and in the *Diamond Foods* case, Dr. Hartzell followed the same procedure for selecting events, choosing only those events that were reported and specifically discussed in the Company's Form 8-Ks filed with the SEC. *See Diamond Foods*, 295 F.R.D. at 248-49. And, in the *Diamond Foods* case, Dr. Hartzell faced the same misguided objections: "that the events studies were not objectively selected;" that Dr.

---

*33 (W.D. Tenn. Mar. 7, 2006) ("Moreover, even assuming, *arguendo*, that the court accepts . . . that there was no cause and effect relationship between news of Accredo's financial condition and its stock price, the court submits that this alone would not negate the efficiency of the market."); *In re NetBank, Inc.*, 259 F.R.D. 656, 674-75 (N.D. Ga. 2009); *In re Retek Sec. Litig.*, 236 F.R.D. 431, 437 (D. Minn. 2007).

1  Hartzell used after the fact market "reactions to establish the predicted direction for
2  the stock price change;" and that the defense expert disagreed with Dr. Hartzell's
3  categorization as negative, rather than positive, arguing that Dr. Hartzell's
4  "quantitative measurements of the information contained in [event news] were
5  incorrect." *Id*. at 249.  Considering these criticisms, Judge Alsup found that "Dr.
6  Hartzell's study examined each of Diamond's official disclosures (through its
7  Form 8-Ks) throughout the class period and analyzed in depth both earnings
8  statements and news . . . This order finds that the set of information selected for
9  analysis is reasonably objective." *Id*.

          **1.  Dr. Roper's Critiques Of The First Quarter 2010 Earnings Announcement Event Are Incorrect**

12  Defendants incorrectly assert that Dr. Hartzell used "after-the-fact market
13  reaction" in analyst reports to inform his judgment that the "First Quarter 2010
14  Earnings Announcement (Event #1)" was net-negative news, as opposed to net-
15  positive news.  (Opp. at 8).  However, Dr. Hartzell's classification was not done
16  with any "hindsight bias" as Defendants and Roper misrepresent.  Defendants are
17  merely parroting the same argument rejected in *Diamond Foods*, that looking at
18  analyst reports to inform a directional hypothesis was improper.  295 F.R.D. at
19  249.  There, Judge Alsup found that Dr. Hartzell's review of analyst reports was
20  not improper in setting his directional hypothesis, stating "[a]s to the content of
21  those [analyst] reports, Dr. Hartzell claims that such information was used to 'help
22  classify each earnings announcement as a positive or negative surprise,' or as one
23  that was unlikely to cause a price reaction.  He did not, however, rely on the
24  analyst reports of the actual post-announcement stock-price reactions to establish
25  the predicted direction for the stock price change.  Defendant's expert has failed to
26  establish that the event study uses a flawed methodology on this ground . . ." *Id.*
27  As stated in his report, Dr. Hartzell selected the events to be studied based
28  on the specific information contained in the Form 8-Ks filed during the Class

1  Period, Dr. Hartzell then categorized the disclosure events as positive or negative based on the likely market response – but this was done "without any consideration of the stock returns for China Integrated on the 8-K date or any other date." (Hartzell Report ¶23; Rebuttal ¶13).  With respect to this particular event, Dr. Hartzell pointed to the analyst reports to show that they agreed with his signing of the event as "negative" based on the results and guidance provided in the announcement.  (Hartzell Report ¶28).

Defendants' unsupported contention that the 12% decline in stock price on the news – which Dr. Roper says should have been positive – is really nothing more than Dr. Roper's disagreement with Dr. Hartzell's directional hypothesis and categorization of the event as "negative."  Dr. Roper asserts that the hypothesis contradicts what his field generally expects when a company outperforms expectations and raises guidance, but cites no literature or citation other than Dr. Roper's *ipse dixit* assertion (Roper Report ¶35) – and Dr. Roper's Report utterly fails to accept that there is "mixed" news in the earnings report – some positive, but more negative.  As Dr. Hartzell explains in his Rebuttal, actually citing to recent economic literature, Dr. Roper is "either selectively disclosing the current state of practice in the finance and accounting literatures, or he is misinformed." (Rebuttal ¶14).  Dr. Hartzell also sets forth the objective facts contained in the event and analyst reports to further demonstrate that his "negative" classification had an objective foundation – and not "hindsight bias" as Defendants claim.  (*Id.* ¶¶15-20).  Dr. Roper and Dr. Hartzell simply disagree – but this disagreement it is not a "tell-tale sign of inefficiency" as Defendants wrongly assert.

### 2. Dr. Roper's Critiques Of The Chongqing Acquisition Event Are Incorrect

With regard to the "Chongqing Acquisition," which was announced in the Company's Form 8-K on November 2, 2010, Defendants argue that the announcement on July 7, 2010 (which was not in a Form 8-K) already revealed all

of the information in the October 26, 2010 press release of the closing of the transaction (which was filed with the Company's Form 8-K on November 2, 2010), and thus the later event was not "new" information. (Opp. at 8). As explained in his report, however, Dr. Hartzell believes that due to uncertainty surrounding the transaction after the July 7 press release, the actual completion of the transaction in October was new, "positive" information. (Hartzell Report ¶31; Rebuttal ¶¶21-29). The fact that China Integrated did not file a Form 8-K after the July 7 press release, which stated that negotiations were on-going, only supports the notion that the closing of the deal was uncertain, as any "certain" transaction would have been "material" and thus reported by the Company in a Form 8-K.

In essence, Dr. Roper is really criticizing the market for not believing the July 7, 2010 press release about a potential, uncertain transaction. In other words, Dr. Roper does not question that there was an immediate cause and effect relationship between the news of the transaction actually closing and a change in the Company's stock price – he just believes that the market should have assumed earlier that the transaction would close and that the same cause and effect relationship should have been demonstrated sooner. In response, Dr. Hartzell provides a thorough explanation why the October closing announcement contains material information consistent with the market's reaction. (Rebuttal ¶¶21-29).

Furthermore, Dr. Roper does not argue that inclusion or consideration of the July 7 press release would cause Dr. Hartzell – or any other expert – to conclude that the market for China Integrated stock was inefficient. There is no specific number of events required to study efficiency. Moreover, an event study need not find all events statistically significant to satisfy the *Basic* presumption. *See, e.g.*, *In re Nature's Sunshine Products, Inc. Sec. Litig.*, 251 F.R.D. 656, 664 (D. Utah 2008) (finding market efficiency where only 25% of event days were statistically significant); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 507 (S.D. Tex. 2004) (10% of event days). Thus, that Dr. Hartzell did not include the July 7 release does

not render the event study unreliable, or support a finding of inefficiency.

### 3. Dr. Roper's Critiques Of The Over-Reaction To The Alfred Little Report Event Are Unfounded

With respect to the Alfred Little report, Defendants seek to discredit Dr. Hartzell's evaluation of this event by asserting that the stock price's "precipitous drop" to the "very little new information" in the Alfred Little report supports a finding of an inefficient, rather than efficient, market. (Opp. at 9, 11). Defendants, however, insert their own subjectivity (and do so without any basis in economic literature or legal citation) to categorize the "new" information as incrementally "very little" in making this wrong assertion.

Contrary to Defendants' and Dr. Roper's characterization, the Alfred Little Report was, in fact, big news – including substantive evidence, including videos, proving a massive fraud and sham operations. In fact, the Alfred Little and the Sinclair Upton Reports were sufficiently "big news" to lead to the Company's own investigation, and regulatory investigations that led to the NASDAQ delisting China Integrated and the SEC deregistering the Company's stock. None of these consequences happened after the unsubstantiated conjecture and innuendo in the Axler or Barron's article, which Defendants ironically claim revealed the very fraud that they are denying ever took place.[3]

More importantly, Defendants do not dispute that the Alfred Little Report was followed by a change in China Integrated's stock price. Rather, they claim that market reacted too much to the Alfred Little report, and criticize the *degree* to which the stock price reacted. With no objective support or academic literature or economic basis – Dr. Roper asserts that "time-lapsed video evidence" would and should have no influence on investors. But, Dr. Roper provides no basis to

---

[3] Dr. Hartzell set forth an objective analysis of the Barron's, Axler, Sinclair Upton Report, and Alfred Little report in his initial Report at ¶¶61-70. In light of Dr. Roper's new arguments, Dr. Hartzell provides additional analysis in his Rebuttal at ¶¶30-35.

determine what stock price of a sham company should be. Moreover, Dr. Roper fails to explain how the magnitude of the stock drop after those events makes Dr. Hartzell's directional hypothesis unreliable. According to the Supreme Court, it does not.

When reaffirming *Basic* in the *Halliburton II* decision, the Supreme Court affirmed that "[d]ebates about the precise *degree* to which the stock prices accurately reflect public information are thus largely beside the point. 'That the … price [of a stock] may be inaccurate does not detract from the fact that false statements affect it, and cause loss,' which is 'all that *Basic* requires.'" *Halliburton II,* 134 S. Ct. at 2410 (citation omitted).[4]

### 4. Dr. Roper's Assessment Of The China Integrated's Response To The Sinclair Upton Report Is Incorrect

Defendants also argue that Dr. Hartzell's "subjectivity is further evidenced by his failure to include the Company's March 23, 2011 response to the Sinclair Upton report as an event in his study." (Opp. at 9). However, the Company's March 23, 2011 response (styled as a shareholder letter) was not published or specifically identified in any Form 8-K filed by China Integrated. (Hartzell Report ¶37-38; Rebuttal ¶10). Dr. Hartzell set parameters to include events as specifically identified in the 8-Ks. The 8-K filed by China Integrated on March 30, 2011 specifically identifies the March 16, 2011 Sinclair Upton Report and the March 28, 2011 Alfred Little Report, which Dr. Hartzell included as events. Dr. Roper now

---

[4] By attempting to discredit the importance of the Alfred Little report by comparing to the earlier Barron's article and Axler blog post, Defendants are essentially asserting a "truth on the market" defense – arguing that investors should have already been alerted to the egregious fraud alleged in the later Alfred Little Report (and Sinclair Upton Report), which undeniably caused the stock price of China Integrated to plummet. However, the Supreme Court rejected these types of "loss causation" defenses at the class certification stage. *See Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 131 S. Ct. 2179, 2183, 2186 (2011) ("[l]oss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory").

tries to stretch the contents of the March 30, 2011 Form 8-K to include the March 23, 2011 shareholder letter; however, Dr. Hartzell's pre-defined protocol does not support that stretch.

Nevertheless, inclusion of this event would not undermine Dr. Hartzell's conclusions because it was a statistically significant event. Defendants and Dr. Roper claim that it was *not* statistically significant, but that is clearly false as Dr. Roper's Report at Page 65 (3/23/11 regression results) shows that the March 23, 2011 response ***was*** **statistically significant** – further undermining Dr. Roper's credibility and critique. (*See* Rebuttal ¶10).[5]

### D. Defendants' Other Purported "Hurdles" To Class Certification Are Without Merit

Defendants assert that there are "three key hurdles" to certification in this case. (Opp. at 12).[6] However, the "first" and "third" challenges are based on Defendants' misguided, and legally unsupported, attempt to undermine Plaintiffs' Securities Act and Exchange Act claims by dividing the putative class into "subclasses." Tellingly, Defendants' Opposition does not cite any authority that supports such proposition. Indeed, it is well-settled in this District and others that claims arising out of §10(b) Claims and §11 Claims should be tried with a single class, because both claims require proof of the same conduct (*e.g.,* making false and misleading statements). As Judge Pfaelzer held in *Countrywide*, when rejecting similar arguments and certifying a single class, "[t]he asserted '33 [§11]

---

[5] Although not specifically raised in Defendants' Opposition, Dr. Roper makes other flawed critiques concerning Dr. Hartzell's Report and methodologies. In response, Dr. Hartzell addresses and points out the flaws with Dr. Roper's other assertions in the Rebuttal. (*See* Rebuttal ¶¶36-48).

[6] Rather than fully oppose Plaintiffs' renewed motion, Defendants improperly try to incorporate by reference their previously (meritless) arguments in their prior opposition brief (s*ee* Opp. at 12:7-9). To the extent that the Court considers Defendants' prior brief, Plaintiffs respectfully refer the Court to Plaintiffs' prior reply brief [Dkt. 229], which refutes these prior arguments not made in Defendants' current Opposition.

and '34 Act [§10(b)] claims – ***though they have slightly different legal standards (and burdens)*** and name different Defendants – ***are best tried in a single class***." 273 F.R.D. at 597 (emphasis added); *accord In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 283 (S.D.N.Y. 2002) ("[c]ourts have routinely certified a single class asserting both Securities Act and Exchange Act claims.").

Nonetheless, Defendants attempt to sever the Section 11 claims to defeat numerosity. In asserting that there are only 16 putative plaintiffs with §11 Claims, Defendants rely on distorted facts and legal principles, including a self-serving interpretation of a series of Special Purchase Agreements ("SPAs") utilized in the Secondary Offering. First, to arrive at "16," Defendants improperly deem separate and distinct entities as single entities, simply because of shared management or ownership. Second, Defendants raise defenses that are beyond the scope of the class certification inquiry, such as challenges to venue. These SPAs, which Plaintiffs contend are inadmissible and irrelevant to the class certification inquiry, at best raise factual disputes to be resolved at trial. Third, and most erroneous, Defendants improperly assume that §11 standing (and the number of shareholders in the class) is extinguished when initial purchasers sell their shares in the secondary market. This interpretation is in direct conflict with the text of §11, which affords standing to "any person acquiring such security" in the relevant offering. 15 U.S.C. §77k(a). Indeed, the "tracing" requirement – even for "***secondary market***" or aftermarket purchasers – is inappropriate for determination at the class certification stage and will not defeat certification. *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 61 (S.D.N.Y. 2013) (certifying class); *Countrywide*, 273 F.R.D. at 598.

Regarding the "second" challenge, Defendants argue that Plaintiffs are "atypical" because Puerto Rico TRS's investment advisor (NorthPointe) and Bristol purportedly "targeted CBEH believing the market to be inefficient and both purchased CBEH with knowledge of the alleged fraud." (Opp. at 13). Defendants'

assertions are factually and legally wrong, because Plaintiffs did rely on market price, and exploiting perceived value inefficiencies as to value does not render the market inefficient or plaintiffs atypical. *See, e.g.*, *Diamond Foods*, 295 F.R.D. at 250-51 (rejecting that investment manager's strategy seeking to "exploit 'market inefficiencies'" actually "refutes the premise of the fraud-on-the-market doctrine"); *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 45-46 (S.D.N.Y. 2012) (rejecting argument that atypical where investment manager testified that "he did not believe in the efficient market hypothesis"). Moreover, the testimony of NorthPointe refutes the contention that they did not rely on the market in deciding to purchase and sell CBEH stock, stating that market price would be one of the considerations NorthPointe used in using their own analysis to value stock expectations. (Wilk Depo. at 12:13-16; 177:14-24, Ex. 1 to the Declaration of Ian Berg, filed herewith).

Further, Defendants unfounded assertion that Plaintiffs purchased "with knowledge of the alleged fraud" is absurd. As Defendants do not cite any facts or law on this, Plaintiffs presume that Defendants are referencing purchases following the Barron's article and Axler post, which is addressed above. However, Plaintiffs' purchases following these articles – or any other partial disclosure – are immaterial to Plaintiffs' ability to represent the Class. Indeed, the overwhelming majority of courts have held that a class representative meets the typicality requirement even when it purchased stock both before and after a partial or total disclosures. *See In re Connetics Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) ("post-disclosure purchases do not automatically defeat typicality") (citing cases).

## II. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully submit that the proposed class should be certified pursuant to Fed. R. Civ. 23.

Dated:  January 19, 2015            Respectfully submitted,

ABRAHAM, FRUCHTER
& TWERSKY, LLP

  /s/ *Ian D. Berg*

IAN D. BERG   (Bar No. 263586)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel:   (213) 943-1356
Fax:   (858) 792-3449
*iberg@aftlaw.com*

ABRAHAM, FRUCHTER
   & TWERSKY, LLP
TAKEO A. KELLAR   (Bar No. 234470)
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 792-3448
Fax:   (858) 792-3449
*tkellar@aftlaw.com*

ABRAHAM, FRUCHTER
   & TWERSKY, LLP
MITCHELL M.Z. TWERSKY (*phv*)
MARK S. HAMILL (*phv*)
LAWRENCE D. LEVIT (*phv*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel:   (212) 279-5050
Fax:   (212) 279-3655
*mtwersky@aftlaw.com*
*mhamill@aftlaw.com*
*llevit@aftlaw.com*

*Counsel for Lead Plaintiff Puerto Rico Teachers Retirement System*

WILLIAM B. FEDERMAN (*PHV*)
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel:   (405) 235-1560
Fax:   (405 239-2112
*wbf@federmanlaw.com*

*Counsel for Plaintiff Bristol Investment Fund, Ltd.*